Bradbury, J.
There was no substantial conflict in the testimony relating to any fact upon which the respective rights of the parties rested. The circuit court, however, found and stated the facts separately from its conclusions of law. From this finding and the pleadings it appears that in the year 1878, Jane Allen was the owner of the real estate which is the subject of the controversy. That at the May term of the court of common pleas of Summit county for that year the plaintiff recovered a judgment against said Jane Allen and others for the sum of $424.17; and thereafter the said James S. Carpenter and George K. Pardee, in their life *139 time also recovered a judgment against Jane Allen for the sum of $166.51.
, That executions were issued upon both said judgments and severally levied upon the said premises of said Jane Allen, the lien of the plaintiff’s judgment being prior to that of said Carpenter and Pardee. That executions have been issued from time to time upon said judgments, and the liens of both have been kept alive and in force up to the hearing of this cause, and are now valid liens against said premises.
That after the said Russell had recovered judgment, he caused execution to issue thereon and levied on the premises in controversy. That said Jane Allen thereupon demanded that the same should be set off to her as a homestead which the sheriff refused to do, but instead, sold the same on a vendi exponas to said William E. Allen who paid the purchase price to the sheriff. That afterwards, by decision of this court, Mrs. Allen was adjudged to be entitled to hold the premises as a homestead, and thereupon the price that said plaintiff in error had paid was refunded to him.
That at the time and prior to the rendition of said judgments, said Jane Allen was living in, and occupying said premises as her homestead, and that said defendant, William E. Allen, after said sale by the sheriff immediately moved into said premises and occupied them, his mother living with and being supported by him until April, 1887, at which time he removed from said premises. That thereafter said William E. Allen received the rents of said premises and continued to support his mother, until her death, on the sixth day of June, 1894.
*140 -That after the sale of said premises by the sheriff to said William E. Allen, and during the pendency of said litigation in the district and Supreme Courts, as above stated, “he paid the taxes on said premises, aggregating at the time of the setting aside of the sale by the Supreme Court, to the sum of $74.54.”
That after the setting aside of said sale by the Supreme Court, and the holding that said Jane Allen was entitled to a homestead therein, to-wit: On the twentieth day of January, 1885, said premises were sold for taxes unpaid and delinquent thereon for the years 1883 and 1884, to the amount of $118.18; that at said tax sale said defendant, William E. Allen, purchased said premises and received a tax certificate therefor, which he held for a period of two years, and on the twenty-first day of January, 1887, he received a tax deed of the auditor of said county for said premises which said tax deed by reason of irregularities and nonconformity to the statutes relating thereto, is found to be invalid and irregular, and the same is set aside, held for naught.
That at the time he purchased said premises at said tax sale and received said certificate and also said tax deed, he was still living in said premises with his mother under said agreement to care for and support her, that he continued to occupy said premises with his said mother until said first day of April, 1887, when he removed from said premises, and made the new agreement hereinbefore mentioned.
That after two years from the date of the sale of said premises for taxes, said defendant, William E. Allen, made lasting and valuable improvements on said premises under said tax title, and in. good *141 faith, and supposing that he had a good title to said premises, that the value of said improvements was $160. That he annually paid the taxes on said premises after purchasing the same as aforesaid down to the present time, amounting in the aggregate to the sum of $245.92.”
That after he removed from said premises he has received and collected the rent thereof amounting in the aggregate to more than the taxes so paid by him, and of the lasting improvements so made by him.”
CONCLUSIONS OF LAW.
“'^“And the court as its conclusions of law from the facts above stated holds, finds and adjudges — ”
“I. That said defendant, William E. Allen, is not entitled to be reimbursed for taxes so paid by him pending litigation under the sheriff’s sale as aforesaid made; and said claim is by the court disallowed and dismissed.”
“II. The said William E. Allen is not entitled to be reimbursed for lasting and valuable improvements made and established as aforesaid, and the same are disallowed and said claim dismissed.”
“III. That said William E. Allen is not entitled to be reimbursed for the taxes thereafter paid by him with interest thereon. ”
“All said claims are disallowed on the ground that said Allen having occupied said premises as aforesaid and having collected and received rents of said premises in excess of all said taxes and lasting and valuable improvements. It is ordered that his said answer and cross-petition be and the same is hereby dismissed.”
Prom this conclusion of law it is quite apparent that the circuit court in arriving at its judgment, *142 did not take into consideration the value of the support given by the plaintiff in error to his mother. If the circuit court was right in this, its judgment should be affirmed; otherwise it should be reversed.
The plaintiff in error occupied the premises in one of two capacities. His relation to it was either that of an owner or as a tenant of his mother. He could not at the same time occupy it in both capacities. The circuit court dealt with him as if he had been the owner under a bona fide claim of title which was defective. It in fact expressly found that the tax sale and deed were defective but that he believed in good faith that they conferred a good title on him, and on the faith of that belief made the improvements for which he claimed compensation, and it further found that the sale was irregular and invalid. This finding placed him within the category of occupying claimants under section 5786, Revised Statutes. That court did not deny his claim to be reimbursed for taxes paid and improvements made but finding’ that the rents received by him from the premises exceeded the aggregate sum composed of the taxes paid by him, and the value of the improvements he had made thereon as a bona fide occupant under claim of title, denied his claim to relief on account of such expenditures, simply, because that claim had been satisfied by the rents he had received.
His first possession of the property was taken as purchaser thereof at judicial sale, and of course his relation to it was then that of an absolute owner in fee simple, and the rents or profits received by him while the property was thus occupied should be set off against any claim he might have for improvements made and taxes paid during this period. For if he was occupying the property *143 as its owner and not by virtue of a contract with his mother to support her in consideration of the rents from it he had no legal claim to have the support given to her taken into the account. But after this court had adjudged that Mrs. Jane Allen was entitled to a homestead in the premises and the money the plaintiff in error had paid for it at the judicial sale had been refunded to him, his title terminated, and thenceforward, until his mother’s death, his possession was under her, unless he subsequently acquired an independent title adverse to her.
The only title he subsequently acquired was that founded on the sale for taxes mentioned in the special finding of facts.
The finding of the circuit court does not specifically state the terms of the contract between the plaintiff in error and his mother by virtue of which he occupied the premises after the homestead had been assigned to her. It does state, however, that when he bought the property “at tax sale and received said certificate and also said tax deed, he was still living in said premises with his mother under said agreement to care for and support her.” This constituted the relation of landlord and tenant between the two. A most confidential relation, that of mother and son also existed, and in addition to these relations she was a member of his family, and as the income of the property was not sufficient to support her, to a considerable extent dependent upon him.
Under these circumstances, as against her, he could not acquire, by a tax sale and deed, a title adverse to her, but would hold it as her trustee. A court of equity would not permit him in that way to acquire an adverse title by means of which *144 he could cast off the burden of his contract to support her. Equity, notwithstanding this tax sale and deed would continue to regard him as her tenant. But whether the tax sale and deed were, in all respects, regular and valid or not, as long as the plaintiff in error continued to support his mother, she could not have asserted against him a claim to the rents of the property. If she could not assert such a claim in her lifetime her creditors could not directly or indirectly assert it after her death. To permit in favor of these creditors, the rents and profits to be set off against any claim he could otherwise assert against the property on account of taxes paid and improvements made, would in effect, be to compel him to account to such creditors for those rents and profits. The judgment of the circuit required this accounting, which was the foundation of the error it fell into. Whatever claim the plaintiff in error could assert against the premises should not be defeated in this way. This brings us to a consideration of his claims.
If the plaintiff in error is regarded as a tenant of his mother under a contract to support, her in consideration of the rents of the premises, and permitted to avail himself of that relation to avoid a legal accounting for those rents to her judgment creditors, he should not be allowed to occupy an inconsistent relation to the property, that of an independent owner in order to charge those creditors with the value of the improvements made by him thereon. We think, therefore, that the claim of the plaintiff in error to compensation on account of any improvements placed on the property by him, should be disregarded.
*145 His mother being the owner of the premises, should have paid the taxes assessed against it. Her obligation in this respect was neither enlarged or diminished by its having been set off to her as a homestead. But while this was so, she incurred no forfeiture by neglecting this duty. The effect of the nonpayment of the taxes was simply to create an obligation to the state which became a lien on the premises superior to that of the judgment creditors. The plaintiff in error, in the absence of a stipulation to that effect in the contract between his mother and himself for her support, was under no valid obligation to pay the taxes on the premises. The record is silent respecting such stipulation. It may be assumed, therefore, that their nonpayment should not be attributed to any default on his part.
This being so, we see no reason for prohibiting him from purchasing the premises at the tax sale. The title he should thereby acquire being- at the election of his mother held in trust for her. If the sale had been valid and his mother had sought to have him declared her trustee, it is clear that she would have been entitled to that relief only on condition that he should be reimbursed for the money he had paid at the sale, and subsequently for taxes. It is not, however, material to inquire into his right in this supposed state of the case, for the circuit court, as a matter of fact, found the sale to have been irregular and invalid. The sale, having- been invalid and he under no obligation to pay the taxes originally, no reason is apparent for denying to him the lien created by section 2880, Revised Stat utes, which reads as follows:
*146 “Section 2880. Upon the sale of any land or town lot for delinquent taxes, the lien which the state has thereon for taxes then due shall be transferred to the purchaser at such sale; and if such sale should prove to be invalid on account of any irregularity in the proceedings of any officer having any duty to perform in relation thereto, the purchaser at such sale shall be entitled to receive from the proprietor of such land or lot the amount of taxes, interest and penalty legally due thereon at the time of such sale, with interest thereon from the time of payment thereof, and the amount of taxes paid thereon by the purchaser subsequent to such sale; and such land or lot shall be bound for the payment thereof. ”
We think, therefore, that he was entitled on the pleadings and the undisputed facts, to a decree for the amount he had paid at the tax sale and the taxes subsequently paid by him together with interest thereon, at the rate of six per cent, per annum from the date the respective payments were made, and that for the sum thus due him he had a paramount lien on the premises. The finding of facts does not give the dates, nor the respective amounts, of the several payments of taxes made by the plaintiff in error. Had the finding stated those matters final judgment would have been rendered by this court. For want of that data the cause will be remanded to the circuit court.

Judgment reversed cmd catóse remanded.